IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| DAVID AND JULIE KING, | ) | CR 09-96-M-DWM |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| STATE FARM FIRE AND CASUALTY | ) | |
| COMPANY, RON NICOLSON, PAM | ) | |
| NICOLSON, DUNCANWOODS LOG | ) | |
| HOMES, INC., and LINCOLN LOGS, | ) | |
| LTD., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I. Introduction

Plaintiffs, David and Julie King ("the Kings"), brought this action against

State Farm Fire and Casualty Company ("State Farm") based on a judgment in

favor of the Kings in an underlying state action.  The Kings allege State Farm was

required to provide coverage under an insurance policy issued to the defendants in

the underlying action and failed to do so.[1]  State Farm now moves for partial

summary judgment on Count I, as to whether the terms of the insurance policy

required it to provide coverage in the underlying state action.

## II.  Factual Background

**A.     The Policy**

Lincoln Logs, Ltd. ("Lincoln Logs") is a business that sells

log home construction packages.  Amd. Compl., ¶¶ 23-25.  Duncanwoods Log

Homes, Inc. ("Duncanwoods") is a sales agent of Lincoln Logs, and Duncanwoods

is owned by Ron and Pam Nicolson.  Id. at ¶¶ 28-29.  At the time of the events

alleged in the underlying complaint, Duncanwoods and the Nicolsons were

insured under an insurance policy issued by State Farm ("the Policy").  Id. at ¶ 30.

Lincoln Logs is listed as an additional insured on the Policy.  Id. at ¶ 36.

The Policy provides coverage for "bodily injury, property damage, personal

injury, or advertising injury to which this insurance applies."  Policy, dkt #19-1 at

23.  An "occurrence" is "an accident, including continuous or repeated exposure to

substantially the same general harmful conditions which results in bodily injury or

---

[1] The defendants in the underlying action, Lincoln Logs, Ltd. and Duncanwoods Log
Homes, Inc., have assigned all their rights against State Farm to the Kings.  Amd. Compl., ¶ 8.

property damage" or "the commission of an offense, or a series of related offenses,

which results in personal injury or advertising injury." Id. at 35. "Bodily injury"

is "bodily injury, sickness or disease sustained by a person, including death

resulting from the bodily injury, sickness or disease at any time." Id. at 33.

"Property damage" is:

> a.    physical injury to or destruction of tangible property, including
>        all resulting loss of use of that property.  All such loss of use
>        will be considered to occur at the time of the physical injury
>        that caused it; or
> b.    loss of use of tangible property that is not physically injured or
>        destroyed, provided such loss of use is caused by physical
>        injury to or destruction of other tangible property.  All such
>        loss of use will be considered to occur at the time of the
>        occurrence that caused it.

Id. at 36.

The Policy contains several exclusions from coverage.  These exclusions

include a products-completed operations hazard.  Id. at 1, 50.  The products-

completed operations hazard "includes all bodily injury and property damage

arising out of your product or your work except products that are still in your

physical possession or work that has not yet been completed or abandoned." Id. at

35.  The Business Liability coverage under the Policy also does not apply "to

property damage to your product arising out of it or any part of it" or "to property

damage to your work arising out of it or any part of it and included in the

products-completed operations hazard." Id. at 27.

**B.       The Underlying Action**

The Kings purchased property in the Bitterroot Valley in Montana and desired to build a log home there.  In 2004, they talked to representatives of Lincoln Logs and Duncanwoods at a log home exposition.  Underlying Complaint, ¶ 13 (dkt #27-1).  Lincoln Logs and Duncanwoods represented they could provide a quote, and the Kings alleged they believed they were getting a quote for a package comparable to one for which they had previously contracted.  Id. at ¶¶ 16-19.  The Kings state that they contracted for a log home package comprised of "premium 10 inch Swedish cope cut, full length logs" that were pre-cut and included pine and spruce logs.  Id. at ¶¶ 20-21.  The Kings then employed a construction company to build the house once they received the log home package.  Id. at ¶ 23.  When they received the log home package, the underlying complaint asserts it was not what the Kings contracted for, and they claimed numerous deficiencies in the package, including short and random length logs, a unacceptable mix of fir, spruce and lodge pole pine logs, a lack of "tie logs" to stabilize the home, logs with a rougher finish than desired which required additional planing and sanding, undesirable gaps at the corners that required sealing, and logs that were not pre-cut.  Id. at ¶¶ 26-27.

4

In April 2006, the Kings instituted the underlying action in state court against Lincoln Logs and Duncanwoods.  They stated claims for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the Montana Consumer Protection Act, negligent misrepresentation, actual and constructive fraud, breach of express warranties, and emotional distress.

State Farm did not defend in the underlying case.  The parties dispute whether State Farm initially defended Duncanwoods under a reservation of rights, whether Lincoln Logs ever tendered its defense to State Farm, and whether or under what circumstances State Farm withdrew from the defense of Duncanwoods or refused to defend Lincoln Logs.

The case proceeded to a jury trial in Ravalli County in July 25, 2008.  On July 28, 2008, the jury entered a verdict in the Kings' favor, awarding them a total of $482,336.  Amd. Compl., ¶¶ 73, 75.  The district court awarded the Kings $106,962 in attorney fees and $6,349.76 in costs, and later awarded duplicate costs in the amount of $4,440.71.  Id. at ¶¶ 81-83.  The damages awarded to the Kings total $600,088.47, plus interest.  Id. at ¶ 84.  The Kings now assert State Farm wrongfully refused to defend the underlying suit and must pay the full amount.

### III.  Analysis

**A.      Summary Judgment Standard**

5

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An adverse party may not rely on mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided, must set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e). If there is no genuine issue of material fact, the court must determine whether the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

**B.    Montana Law Regarding an Insurer's Duty to Defend**

The interpretation of an insurance contract is a question of law for the Court.  Babcock v. Farmers Ins. Exchange, 999 P.2d 347, 348 (Mont. 2000).  The Court construes terms according to their usual, commonsense meaning.  Natl. Farmers Union Property & Casualty Co. v. George, 963 P.2d 1259, 1261 (Mont. 1998).  The interpretation should honor the objectively reasonable expectations of the insured.  Hanson v. Employers Mut. Ins. Co., 336 F. Supp. 2d 1070, 1075 (D. Mont. 2004).  Any ambiguities regarding coverage are construed against the insurer.  Hanson, 336 F. Supp. 2d at 1073.  However, a policy provision is not ambiguous just because the parties disagree as to its interpretation, and "courts

6

will not distort contractual language to create an ambiguity where none exists."

Giacomelli v. Scottsdale Ins. Co., 221 P.2d 666, 672 (Mont. 2009).

To determine if coverage exists, giving rise to a duty to defend, the insurer must look to the provisions of the policy and the allegations in the complaint.

Farmers Union Mut. Ins. Co. v. Staples, 90 P.3d 381, 385 (Mont. 2004).  An insurer's duty to defend arises when a complaint alleges facts, which if proven, would result in coverage under the terms of the policy.  Id.  "[I]t is the acts giving rise to the complaint which form the basis for coverage, not the complaint's legal theories or conclusory language."  Town of Geraldine v. Mont. Mut. Ins. Authority, 198 P.3d 796, 800 (Mont. 2008).  "When a court compares allegations of liability advanced in a complaint with policy language to determine whether the insurer's obligation to defend was 'triggered,' [the] court must liberally construe allegations in a complaint so that all doubts about the meaning of the allegations are resolved in favor of finding that the obligation to defend was activated."

Farmers Union Mut. Ins. Co., 90 P.3d at 385.  If an insurer unjustifiably refuses to defend, the insurer is liable for costs incurred in the defense of the claim.  Id.

**C.     The allegations of the underlying complaint fall outside the scope of coverage**.

State Farm argues it was not required to provide coverage in the underlying

suit because the allegations in the underlying complaint fell outside the scope of coverage.  State Farm asserts there was no "occurrence" within the meaning of the Policy and there was no allegation of either bodily injury or property damage. The Kings concede there is neither advertising injury nor personal injury alleged in the underlying complaint.

      1.   <u>The underlying complaint does not allege an "occurrence" within the meaning of the Policy.</u>

An "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions which results in bodily injury or property damage."  Policy, dkt #19-1 at 35.  State Farm argues there was no "occurrence" that led to the underlying claims because no accident led to the harms alleged by the Kings.  The Kings claim the underlying complaint alleges an accidental "occurrence" led to their damages because it was an "accident" the logs were of poor quality.  They also argue that "accident" is ambiguous and the Court should follow the minority rule that faulty workmanship is accidental.

The Montana Supreme Court has concluded there is no coverage for intentional acts that lead to accidental injuries under a definition of "occurrence" nearly identical to that used here.  <u>Blair v. Mid-Continent Casualty Co.</u>, 167 P.3d 888, 891-92 (Mont. 2007).  In <u>Blair</u>, the insured built a gravel pit in a residential

area, despite zoning restrictions and was sued by a landowners association.  Id. at

890.  The Montana Supreme Court concluded the policy did not provide coverage

for Blair because the "deliberate operation of removing gravel," was intentional,

rather than an "accident" as required by the policy.  Id. at 891.  Similarly, an

employee's claim that he had been wrongfully discharged was not an accidental

occurrence covered by the employer's insurance policy because it was an

"intentional" act and the claimed damages "may be expected to flow directly as

injuries from such a discharge."  Daly Ditches Irrigation Dist. v. Natl. Sur. Corp.,

764 P.2d 1276, 1277-78 (Mont. 1988).

       The Montana Supreme Court has also concluded there is no coverage for

negligent misrepresentation and constructive fraud claims based on the same

conduct as a breach of contract claim that was not covered by a policy.  Town of

Geraldine, 198 P.3d at 800-802.  In Town of Geraldine, the Town entered a

contract to have a well drilled, but did not pay for it.  The drilling company

brought claims for breach of contract, negligent misrepresentation, and

constructive fraud.  Id. at 797-98.  Because "it is the acts giving rise to the

complaint which form the basis for coverage, not the complaint's legal theories,"

and because all the claims were based on the events surrounding the alleged

breach of contract, there was no coverage for any of the claims.  Id. at 800.

9

The underlying complaint does not allege an "occurrence" led to the Kings' damages.  As in <u>Daly Ditches</u> and <u>Blair</u>, the Kings alleged intentional business decisions by Duncanwoods and Lincoln Logs led to the Kings' damages.  The facts alleged in the underlying complaint assert not that there was an accident, but that Duncanwoods made various representations about the quality of the materials and "[Duncanwoods and Lincoln Logs] refused to honor the contract and the warranties," despite several requests by the Kings.  Underlying Complaint, ¶ 31, 26 (dkt #27-1).  In addition, the underlying complaint does not allege the logs were "accidentally" damaged, but that "the logs were factory seconds and of lesser quality then [sic] those ordinarily provided in the industry."  <u>Id</u>. at ¶ 32.  The remaining claims rely on the same allegations – the poor quality of the materials – and also assert Duncanwoods and Lincoln Logs made various false representations and refused to honor warranties to correct any deficiencies in the product.  These claims "may be expected to flow directly as injuries from" the refusal of Duncanwoods and Lincoln Logs to address the Kings' complaints, and, therefore, are not an accident.  <u>Daly Ditches</u>, 764 P.2d at 1278.  As in <u>Town of Geraldine</u>, the same conduct that underlies the contract claim also forms the basis of the negligent misrepresentation and constructive fraud claims.

The Kings' argument that the events here constitute an "occurrence" is

unsupported by the facts alleged in the underlying complaint.  The Kings

submitted an affidavit by Duncanwoods' owner, Ron Nicolson, claiming it was an

"accident" the Kings got random length logs and more species than permitted in

the contract.  Nicolson Aff., ¶¶ 24-26.  He also claims "the hand-hewing was

accidentally excessive, which actually damaged the individual logs" and the logs

were "accidentally hewn through the corner notches."  Id. at ¶¶ 27-28. However,

"[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting

evidence, is insufficient to create a genuine issue of material fact."  F.T.C  v.

Publishing Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997).

   In addition, the Kings are incorrect that "accident" is ambiguous and the

Court should adopt the minority rule as to what constitutes an accident.

The Court "will not distort contractual language to create an ambiguity where

none exists."  Giacomelli, 221 P.2d at 672.  As already discussed, the Montana

Supreme Court has concluded that intentional business decisions are not accidents.

Further, while a minority of jurisdictions have adopted the view that faulty

workmanship is an accident, this Court is bound to follow the state law when

sitting in diversity and is not at liberty to disregard applicable Montana law.  Davis

v. Metro Productions, Inc., 885 F.2d 515, 524 (9th Cir. 1989).

   Even if it were an "accident" that inferior logs were delivered, it was not an

accident when Duncanwoods and Lincoln Logs declined to rectify the problems

complained of by the Kings. The underlying complaint does not allege an

"occurrence" within in the meaning of the Policy because no "accident" caused the

Kings' damages.

       2.    <u>The underlying complaint does not allege "bodily injury" within the meaning of the Policy.</u>

"Bodily injury" is "bodily injury, sickness or disease sustained by a person,

including death resulting from the bodily injury, sickness or disease at any time."

Policy, dkt #19-1 at 33.  The underlying complaint alleges the Kings "suffered

tremendously, both financially and mentally.  Plaintiffs are extremely distraught

over the look of their log package."  Underlying Complaint, ¶ 30 (dkt #27-1).  It

also alleges "Plaintiffs are extremely distraught and upset over Defendants'

fraudulent actions and Defendants' failure to rectify the situation . . .[and] the

excess cost incurred in this project," as a result of which "Plaintiffs suffered severe

emotional distress."  <u>Id</u>. at ¶¶ 86-87.

Under the law at the time State Farm denied coverage, "bodily injury," as

defined in the Policy, did not include emotional injuries or the physical

manifestations of emotional injuries.  <u>Jacobsen v. Farmers Mut. Ins. Co.</u>, 87 P.3d

995, 999 (Mont. 2004).  Just before the trial in the underlying case, the Montana

Supreme Court overruled <u>Jacobsen</u>, concluding that "bodily injury" may include "mental injuries with physical manifestations," but does not include "purely emotional injuries without physical manifestations."  <u>Allstate Ins. Co. v. Wagner-Ellsworth</u>, 188 P.3d 1042, 1051 (Mont. 2008).[2]

The allegations in the underlying complaint and Montana's law at the time State Farm denied coverage preclude coverage for bodily injury.  State Farm correctly concluded that under <u>Jacobsen</u> the emotional distress claims were not "bodily injury."  Further, even under <u>Wagner-Ellsworth</u>, State Farm was not required to provide coverage.  The underlying complaint alleges only that the Kings were distraught and suffered emotional distress, but does not include any allegations that the distress led to any "physical manifestations."  <u>Wagner-Ellsworth</u>, 188 P.3d at 1051.  Therefore, the underlying complaint did not allege "bodily injury" within the scope of coverage under the Policy.

3.   <u>The underlying complaint does not allege "property damage" within the meaning of the Policy.</u>

Property damage includes "physical injury to or destruction of tangible property, including all resulting loss of use of that property" or "loss of use of tangible property that is not physically injured or destroyed, provided such loss of

---

[2] <u>Wagner-Ellsworth</u> was decided on July 8, 2008.  The underlying case commenced in April 2006, and trial began on July 28, 2008.  Amd. Compl., ¶¶ 64, 73.

use is caused by physical injury to or destruction of other tangible property."
Policy, dkt #19-1 at 36.

The underlying complaint alleges the Kings contracted with Lincoln Logs
and Duncanwoods to purchase a log home package that would include "premium
10 inch Swedish cope cut, full length logs" that were pre-cut.  Underlying
Complaint, ¶ 20 (dkt #27-1).  The underlying complaint alleges multiple problems
with the logs: the logs were a mix of fir, spruce and lodge pole pine, rather than
just lodge pole pine and spruce; the logs were random lengths and had "corner
notched ends"; many of the random length logs were short and required building
with more "butt joints" than desired; there were no "tie logs" to stabilize the
house; the package did not include a stacking list or cut sheet; the logs' finish was
rougher than desired, requiring them to be cut, sanded, and planed; the corners
were hand peeled, which created gaps in the corners that required sealing; and the
logs were not pre-cut.  Id. at ¶ 27.  The underlying complaint asserts a material
breach of the contract for "failing to provide premium logs or by failing to provide
a complete package as noted on the agreement between the parties, by providing
factory seconds as opposed to premium quality logs, by providing random length
logs, as opposed to full length logs, and in general, by providing a poor quality
product."  Id. at ¶ 36.  The remaining claims are premised on the alleged

14

misrepresentations about the quality and contents of the log home package the Kings were receiving.

The underlying complaint does not assert any "property damage" within the meaning of the Policy because "the acts giving rise to the complaint" do not include physical injury to or destruction of property.  Town of Geraldine, 198 P.3d at 800.  Nothing in the underlying complaint suggests the logs were injured or destroyed.  Instead, the underlying complaint asserts the Kings did not get the length, species, and quality of logs for which they contracted.  Further, any "loss of use" of the logs or the home was not caused by destruction or injury to the logs, but by the receipt of poor quality materials.  Even when "liberally constru[ing] allegations in [the] complaint so that all doubts about the meaning of the allegations are resolved in favor of finding that the obligation to defend was activated," there is nothing in the underlying complaint that alleges the logs were injured or destroyed, and thus there is no property damage within the meaning of the Policy.  Farmers Union Mut. Ins. Co., 90 P.3d at 385.

Because the underlying complaint does not involve an "occurrence" within the meaning of the Policy, nor does it involve either bodily injury or property damage, State Farm is entitled to judgment as a matter of law.  Under the terms of the Policy, it had neither a duty to defend nor a duty to indemnify in the

underlying case.[3]

## D.  Whether or not State Farm is estopped from denying coverage does not preclude summary judgment on Count I.

State Farm moved for summary judgment only on Count I, which requests declaratory judgment as to the duty to provide coverage in the underlying action, but did not move on Count II, which alleges State Farm is estopped from denying coverage.  The Kings argue State Farm is estopped from denying coverage and therefore cannot succeed on the motion for summary judgment as to Count I.

An insurer may be estopped from later claiming non-coverage under an insurance policy if the "insurer, without reservation and with actual or presumed knowledge, assumes the exclusive control of the defense of claims against the insured."  Safeco Ins. Co. v. Ellinghouse, 725 P.2d 217, 221 (Mont. 1986) (quoting 14 Couch, Insurance 2d § 51.85 (2d ed. 1982)).  Even if an insurer eventually files a declaratory judgment action to establish if there is coverage, this cannot "erase[] any possible wrongs which preceded or followed it."  Id. at 223.  As noted in Ellinghouse, whether or not there is coverage under the terms of a policy as determined in a declaratory judgment action is a separate question from

---

[3] State Farm also argues both the products-completed operations exclusion and "business risk" exclusion unequivocally preclude coverage.  However, because there is no occurrence here and no injury that falls within the Policy, the Court need not address whether the exclusions apply.

whether an insurer is estopped by its own actions from denying coverage.  <u>Id</u>.

Even though State Farm is entitled to summary judgment as to Count I, the Kings

could ultimately prevail on the estoppel claim.  The possible outcome of the

estoppel claim does not affect the outcome as to Count I or preclude summary

judgment for State Farm at this time.

### IV.  Conclusion

IT IS HEREBY ORDERED that State Farm's motion for partial summary

judgment on Count I (dkt #26) is GRANTED.  State Farm had no duty to defend

or indemnify under the Policy terms in the underlying action.

DATED this 18th day of May, 2010.

DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT